# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

### (609) 989-2182

CHAMBERS OF
FREDA L. WOLFSON
UNITED STATES DISTRICT JUDGE

Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

January 26, 2015

Andrew L. Schlafly, Esq.
939 Old Chester Road
Far Hills, New Jersey 07931

Bruce A. Levy, Esq.
Gibbons PC
One Gateway Center
Newark, New Jersey 07102

> **RE:** *Patel, et al., v. Meridian Health Sys., Inc., et al.*
> **Civ. Action No.: 12-3102(FLW)**

Counsel:

Pending before me is a motion to dismiss Count I of the Complaint, filed by defendants Meridian Health System, Inc. ("Meridian"), Scott Larsen, Timothy Hogan, Anthony Cava and George Younan (collectively, "Defendants"). In that cause of action, Plaintiffs Robert B. Patel, M.D. and Mid-Atlantic Medical Associates, LLC (collectively, "Plaintiffs"), accuse Defendants of violating Section 1 of the Sherman act by wrongfully arranging "a joint boycott of Plaintiff Patel's [medical] services]" in an effort to restrain trade. Compl., ¶ 95. In Plaintiffs' opposition to Defendants' motion, Plaintiffs improperly inject various allegations, and rely on documents, that nowhere appear in the Complaint. Accordingly, based on the reasons set forth below, Defendants' motion is **GRANTED**; however, if Plaintiffs intend to pursue their cause of action, they are directed to file a motion to amend before the Magistrate Judge within 30 days of the date of this Letter Order.

For the sake of brevity, I will only summarize the salient facts of this case as they are alleged in the Complaint. Meridian acquired Bayshore Community Hospital ("Bayshore") in 2010, after which time, Dr. Patel, a licensed physician, and his associates at Mid-Atlantic Medical, joined Bayshore's medical staff as independent physicians. Compl., ¶¶ 21, 30. According to Plaintiff, Bayshore is the only hospital serving the community at Holmdel, New Jersey, *see Id.* at ¶ 16, and by its acquisition, Meridian dominated "market power by owning and operating Bayshore and two other hospitals in northern and eastern Monmouth County (including the northern Jersey Shore), controlling more than 50% of the market there for emergent care." *Id.* at ¶ 17.

After the acquisition, Plaintiffs claim that Meridian and its staff, who are named as the individual defendants in this case, "embarked on a concerted effort to destroy the independence of the medical [doctors] at Bayshore." *Id.* at ¶ 22. Among its tactics, Plaintiffs allege that Meridian "disparaged" Dr. Patel for transferring "some patients to Robert Wood Johnson Hospital, which is widely known to provide higher level of care than Bayshore." *Id.* at ¶ 31. According to Plaintiffs, "Defendants objected to these transfers of these patients for purely self-interested economic reasons, rather than for the quality of care of the patients." *Id.* at ¶ 33. By doing so, Plaintiffs claim that Defendants "sought to reduce competition from independent physicians by excluding Plaintiffs." *Id.* at ¶ 34.

Ultimately, because of the patient transfers, Plaintiffs aver that Defendants convened "a multi-disciplinary committee at Bayshore in an attempt by Defendants to find fault with [Dr. Patel]." *Id.* at ¶ 38. However, Bayshore's Disciplinary Committee rejected Meridian's complaints and found that the transfers made by Dr. Patel were appropriate. Id. at ¶ 42. Nevertheless, in 2012, Defendants summarily suspended Dr. Patel's hospital privileges because they found that Dr. Patel improperly transferred patients to other hospitals and because Dr. Patel lacked an outside office in the area. *Id.* at ¶ 44.

Based on Defendants' conduct, Plaintiffs claim that Defendants "acted in concert to restrain trade by improperly summarily suspending the hospital privileges of Plaintiff Patel at Bayshore." *Id.* at ¶ 94. More specifically, Plaintiffs accuse Defendants of acting "in concert to arrange a joint boycott of Plaintiff Patel's services in the relevant market of Holmdel area for emergent care, and in the broader market for emergent care in northern and eastern Monmouth County." *Id.* at ¶ 95. In that connection, Plaintiffs allege that "Defendants' actions were undertaken with a common design, understanding, and unity of purpose to exclude Plaintiffs from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act." *Id.* at ¶ 98. As a consequence, Plaintiffs aver that Defendants' concerted efforts reduced "the competition for emergent care service for newly admitted patients, as provided by Plaintiffs." *Id.* at ¶ 100. Defendants' wrongful conduct, Plaintiffs maintain, has caused "Plaintiffs to lose revenue from the services that Plaintiff Patel and other physicians associated with Plaintiff Mid-Atlantic Medical would have provided to patients had they not been excluded and intimidated." *Id.* at ¶ 108.

In addition to Plaintiffs' Sherman Act claim, Plaintiffs also assert a RICO claim and a discrimination claim pursuant to the American with Disabilities Act, as well as other state law claims which sound in contract and tort. By Order dated May 19, 2014, I dismissed two of Plaintiff's three asserted federal claims, i.e., RICO and ADA claims, and directed Defendants to file a motion to dismiss Plaintiff's Sherman Act claim. In doing so, I held Plaintiff's motion for preliminary injunction in abeyance, pending a decision on this instant motion to dismiss, and I also ordered that my previous temporary injunction order remain in full force and effect.

According to the allegations in the Complaint, the gist of Plaintiff's Sherman Act claim is that Defendants' alleged wrongful conduct of summarily suspending Dr. Patel and his associates has created an anticompetitive effect by excluding Plaintiffs from competition. However, these allegations do not state a claim under Section 1 of the Sherman Act. I need not provide an exhaustive analysis of this claim as it has

been presented in the Complaint, because Plaintiffs, knowing that their allegations are not sufficient, attempt to amend the Complaint in their opposition brief to Defendants' motion to dismiss.

Under Section 1 of the Sherman Act, a plaintiff must allege four elements: (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic market; (3) that the concerted actions were illegal; and (4) that plaintiff was injured as a proximate result of the concerted action. *See Howard Hess Dental Labs, Inc. v. Dentsply International*, 602 F.3d 237, 253 (3d Cir. 2010). Plaintiffs, here, have failed to sufficiently allege these elements. As to the first element, "Section 1 claims are limited to combinations, contracts, and conspiracies and thus always require the existence of an agreement." *Id.* at 254. But, Plaintiffs have entirely premised their allegation of an agreement on a "bathtub conspiracy" among Meridian and its personnel. The anticompetitive nature of the Sherman Act is only directed at a combination involving a plurality of economic actors – individuals or corporate entities that are "separate economic actors pursuing separate economic interests." *Cooperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984). Thus, under the Sherman Act, "officers and employees of the same [company] do not provide the plurality of actors imperative for a § 1 conspiracy." *Id.* In that regard, Plaintiffs cannot base their Sherman Act conspiracy on the concerted actions of Meridian and its corporate officers and personnel, which they have done in the Complaint. Failure to sufficiently allege an agreement is fatal to Plaintiff's claim.

Knowing their deficiencies in this respect, Plaintiffs attempt to amend the Sherman Act claim in their briefing. Plaintiffs allege that Dr. Patel and his associates are hospitalists[1] who provided hospitalist services, and that after they joined Bayshore, Meridian entered into a secret, exclusive contract with another hospital

---

[1]    According to Plaintiffs, a "hospitalist" is a physician, typically trained in internal medicine, who focuses primarily on providing care in a hospital setting to patients who are admitted there. Plaintiffs provided hospitalist services at Bayshore. However, this categorization, whether relevant to the inquiry of the Sherman Act claim, is not pled in the Complaint.

group.  This contract, according to Plaintiffs, "instigated Defendants' abrupt exclusion of Plaintiffs from the market."  Pls. Opp. Br., p. 2.  Because of this contract, Plaintiffs contend that the medical staff bylaws were unreasonably interpreted by Defendants to impose an anticompetitive requirements for physician, among other things, to maintain a costly local office as condition of medical staff privileges to the detriment of Plaintiffs.  *Id.* at p. 11.  This smoking gun, Plaintiffs submit, is at the heart of their Sherman Act claim.  Indeed, Plaintiffs rely entirely on the allegations relating to this exclusive contract to form the basis of the first element of a Sherman Act claim – the existence of a conspiracy or an agreement.  In support of their new allegations, Plaintiffs attach two transcripts from internal Bayshore meetings, as well as an excerpt from the "Exclusive Contract for Hospitalists."  However, these documents were neither described nor mentioned in the Complaint.  More importantly, the Complaint is devoid of any allegations pertaining to the exclusive contract that Plaintiffs seek to introduce on this motion.  As Plaintiffs' counsel is well aware, the Court is precluded from considering any extraneous matters outside of the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (finding that district courts cannot consider matters extraneous to the pleadings).[1]

Nor can Plaintiffs ask this Court to consider these newly asserted allegations.  In order for the Court to consider any allegations that do not appear in the Complaint, at the very least, Plaintiffs must include a proposed amended complaint; they have not done so.  Therefore, the Court cannot consider these new allegations. *See Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 206 (3d Cir. 2006) (holding that failure to submit a draft amended complaint is fatal to a request for leave to amend); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009); *Clark v. Shartle*, No. 14-2469, 2015 U.S. Dist. LEXIS 5543, at *3 (D.N.J. Jan. 15,

---

[1]    An exception to this rule is that when a defendant attaches undisputedly authentic documents to a motion to dismiss and that the plaintiff's claims are based on the attached documents, the Court may consider them. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  That is not the case here; the documents that Plaintiffs seek to introduce are attached to Plaintiffs' opposition, not by Defendants on their motion to dismiss.  As such, this exception does not apply.

2015)(finding that if a plaintiff fails to attach a proposed amended complaint, a court need not consider plaintiffs' allegations).

As to the remainder of the elements, Plaintiffs' allegations further rely upon the existence of an alleged secret, exclusive contract between Meridian and other hospital groups. Indeed, according to Plaintiff's new theory of liability, the illegality of Defendants' anticompetitive conduct is based on this contract, and depending on the content of the agreement, these new allegations impact the relevant product and geographic market; none of which are included in the current version of the Complaint. Thus, based only on the allegations in the Complaint, I do not find that Plaintiffs have sufficiently alleged any of the elements of a Sherman Act claim; however, I will provide Plaintiffs an opportunity to move to amend the Complaint before the Magistrate Judge within 30 days of the date of this Letter Order. In the meantime, before a decision is made on the motion to amend, my previous order restraining Defendants from filing a status report with the NPDB regarding summary suspension of Dr. Patel remains in effect.

**SO ORDERED.**

Sincerely,


/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge