UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT B. PATEL, M.D, et al.,** | Civil Action No. 12-3102 (FLW) |
| **Plaintiffs,** | |
| v. | **MEMORANDUM OPINION** |
| **MERIDIAN HEALTH SYSTEM, INC., et al.** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiffs Robert B. Patel, M.D. ("Patel") and Mid-Atlantic Medical Associates, LLC's ("Mid-Atlantic") (collectively, "Plaintiffs") motion seeking leave to file an Amended Complaint against Defendants Meridian Health System, Inc. ("Meridian"), Scott Larsen ("Larsen"), Timothy Hogan ("Hogan"), Anthony Cava ("Cava") and George Younan ("Younan") (collectively, "Defendants") in order to remove their previously dismissed Racketeer Influenced and Corrupt Organizations Act ("RICO") and Americans with Disabilities Act ("ADA") claims, and to add factual allegations to further support their Sherman Act claim. [Docket Entry No. 48]. Defendants oppose Plaintiffs' motion to the extent Plaintiffs seek to assert a Sherman Act claim. The Court has fully reviewed the papers submitted in support of and in opposition to Plaintiffs' motion. The Court considers Plaintiffs' motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, Plaintiffs' motion is DENIED to the extent Plaintiffs seek to add a Sherman Act claim and GRANTED in all other respects.

I.      **Background and Procedural History**

The parties and the Court are familiar with this case.  As a result, the Court does not restate the facts at length herein.  Instead, the Court adopts the facts as set forth by the District Court in its Letter Order of January 26, 2015 (Docket Entry No. 47 at 2 - 3), which, though bolstered by additional allegations set forth in the proposed Amended Complaint, remain accurate.

In its Letter Order of January 26, 2015, the District Court dismissed Plaintiffs' Sherman Act claim finding that Plaintiffs had failed to sufficiently allege an agreement.  (*Id*. at 4).  In so doing, the District Court noted that Plaintiffs, in their original Complaint, "have entirely premised their allegation of an agreement on a 'bathtub conspiracy' among Meridian and its personnel[,]" but "[t]he anticompetitive nature of the Sherman Act is only directed at a combination involving a plurality of economic actors – individuals or corporate entities that are 'separate economic actors pursuing separate economic interests.'" (*Id*. (quoting *Cooperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984)).  As a result, the District Court determined that "Plaintiffs cannot base their Sherman Act conspiracy on the concerted actions of Meridian and its corporate officers and personnel, which they have done in the Complaint." (*Id*.)

While Plaintiffs recognized the deficiencies regarding this element and attempted to cure same in their briefing on Defendants' motion to dismiss by making new allegations and referencing two transcripts from internal Bayshore meetings, as well as an excerpt from the "Exclusive Contract for Hospitalists," the District Court noted the impropriety of doing so:

> As Plaintiffs' counsel is well aware, the Court is precluded from considering any extraneous mattes outside of the Complaint.  Nor can Plaintiffs ask this Court to consider these newly asserted allegations.  In order for the Court to consider any allegations that do not appear in the Complaint, at the very least, Plaintiffs must

2

> include a proposed amended complaint; they have not done so.
> Therefore, the Court cannot consider these new allegations.

(*Id.* at 5 (citations omitted)).  As a result, the District Court determined that Plaintiffs failed to sufficiently allege an agreement for purposes of the Sherman Act.  Further because Plaintiffs' allegations regarding the other elements of a Sherman Act claim also relied "upon the existence of an alleged secret, exclusive contract between Meridian and other hospital groups[,] . . . allegations which are [not] included in the current version of the Complaint[,]" the District Court found that Plaintiffs failed to "sufficiently allege[] any of the elements of a Sherman Act claim[.]"  (*Id.* at 6).  Nevertheless, the District Court provided Plaintiffs with the opportunity to move to amend the Complaint in order to properly assert a Sherman Act claim.  The instant motion followed.

Through their motion Plaintiffs seek to amend their Complaint in order to remove their previously dismissed RICO and ADA claims, and, more importantly, to add factual allegations to further support their Sherman Act claim.  With respect to their Sherman Act claim, Plaintiffs seek to add allegations concerning the relevant market, an exclusive contract Meridian entered with Hospital Medicine Associates of Monmouth County, L.L.C. ("HMA"), which Plaintiffs describe as an independent hospitalist group, and statements made during a Medical Executive Committee ("MEC") meeting and Ad Hoc Committee meeting.  Plaintiffs argue that, as pleaded, their Sherman Act claim is now viable.  Further, they argue that Defendants will not be prejudiced by Plaintiffs' proposed amendments.

Defendants oppose Plaintiffs' motion to amend.  Defendants' opposition rests solely on futility grounds.  Through their opposition, Defendants take issue with the entirety of Plaintiffs' proposed amended Sherman Act claim, essentially arguing that, as set forth in the proposed

3

Amended Complaint, Plaintiffs' antitrust claim fails to meet any of the elements required under Section 1 of the Sherman Act.

## II.  Analysis

### A.  Motions to Amend the Pleadings

According to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally granted liberally. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, the Court may deny a motion to amend where there is "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. Nevertheless, where there is an absence of the above factors: undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be granted freely. *Long*, 393 F.3d at 400.

As noted above, the only argument raised by Defendants in opposition to Plaintiffs' motion is the alleged futility of Plaintiffs' proposed amended Sherman Act claim. As a result, this is the only issue addressed by the Court herein.[1] While Plaintiffs argue that the Court need not address the futility of a proposed amendment when deciding a motion to amend, futility is a proper consideration for the Court and this Court elects to address same.

A motion to amend is properly denied where the proposed amendment is futile. *See Foman,* 371 U.S. at 182; *Alvin*, 227 F.3d at 121. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations

---

[1] Plaintiffs' motion is granted in all other respects, *i.e.,* Plaintiffs may amend their Complaint to remove the previously dismissed RICO and ADA claims.

omitted).  To determine whether an amendment is "insufficient on its face," the Court employs the motion to dismiss standard under Fed. R. Civ. P. 12(b)(6) (*see Alvin*, 227 F.3d at 121) and examines only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Although a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.  Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or

5

legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B.     Discussion

Through his proposed Amended Complaint, Plaintiffs seek to assert a claim for restraint of trade in violation of Section 1 of the Sherman Act.  Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  As the District Court noted:  "Under Section 1 of the Sherman Act, a plaintiff must allege four elements:  (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic market; (3) that the concerted actions were illegal; and (4) that plaintiff was injured as a proximate result of the concerted action."  (Letter Order of 1/26/2015 at 4 (citing *Howard Hess Dental Labs, Inc. v. Dentsply Int'l*, 602 F.3d 237, 253 (3d Cir. 2010).

Given the fact that in antitrust cases, "proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."  *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).  As a result, "[t]he Court of Appeals had discouraged dismissals of antitrust claims at the pleading stage."  *In re Mushroom Direct Purchaser Anti-Trust Litig.*, 514 F.Supp. 2d 683, 695 (E.D. Pa. 2007) (citing *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995).  Nevertheless, there is no "*per se* prohibition against dismissal of antitrust claims for failure to plead . . . under Fed.R.Civ.P. 12(b)(6)." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  As such, "courts have not hesitated to

dismiss antitrust claims at the pleading stage where proper." *In re Mushroom Direct Purchaser Anti-Trust Litig.*, 514 F.Supp. 2d at 695.

Here, the Court finds many of Defendants objections to Plaintiffs' proposed amended Sherman Act claim to be overreaching at this stage of the proceedings, where no discovery has taken place. For example, while they may not ultimately prove to be sufficient at the time of trial or during summary judgment motion practice, the Court finds Plaintiffs' proposed relevant product and geographic markets to be adequate for the purposes of this motion. (*See* Proposed Amended Cmplt. ¶¶ 16, 17). Nevertheless, the Court agrees with Defendants that Plaintiffs have failed to sufficiently allege an agreement in their proposed Amended Complaint and, as the District Court previously determined, such a failure is fatal to their Sherman Act claim. (*See* Letter Order of 1/26/2015 at 4).

"The essence of a Section 1 claim is the existence of an agreement." *In re Mushroom Direct Purchaser Anti-Trust Litig.*, 514 F.Supp. at 698. Indeed, as the District Court noted, "'Section 1 claims are limited to combinations, contracts, and conspiracies[,] and thus always require the existence of an agreement.'" (*Id.* (quoting *Howard Hess*, 602 F.3d at 254)). "Concerted action is established where two or more distinct entities have agreed to take action against the plaintiff. Accordingly, it requires proof of a causal relationship between pressure from one conspirator and an anticompetitive decision of another conspirator." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005) (citations omitted). "To allege such an agreement between two or more persons or entities, a plaintiff must allege facts plausibly suggesting 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Howard Hess*, 602 F.3d at 254 (quoting *Copperweld*, 467 U.S. at 771 (quotation omitted)). Plaintiffs have not done so in their proposed Amended Complaint.

7

In their proposed Amended Complaint, Plaintiffs have included the following allegations regarding the exclusive contract between Meridian and HMA to support the existence of an agreement:

- ¶ 21.  Defendant Meridian had an undisclosed exclusive contract with an independent hospitalist group, which was a separate economic actor, in order to provide emergent services at Meridian-owned hospitals, and Meridian extended that contract to Bayshore after acquiring it. Defendant Meridian did not disclose the existence of this exclusive contract to Dr. Patel until after he filed the Complaint in this action.

- ¶ 22.  A "hospitalist" is a physician typically trained in internal medicine, who focuses primarily on providing care in a hospital setting to patients who are admitted there.

- ¶ 23.  Unbeknownst to Plaintiffs, Meridian entered into this exclusive contract with this separate hospitalist group, of which Plaintiff Patel was never a member, concerning Bayshore effective July 15, 2011 (the "Hospitalist Agreement"), which was after Dr. Patel had begun working at Bayshore.  This agreement expressly constituted "an exclusive contract with the Physician Group to provide all Urgent Response Services at" Bayshore.  (Hospitalist Agreement p. 1)

- ¶ 24.  The Hospitalist Agreement constituted an agreement between Meridian and a group of physicians who, at all relevant times, were independent of and not employed by Meridian or its affiliates.

- ¶ 25.  Plaintiff Patel and his colleagues at Plaintiff Mid-Atlantic provided services at Bayshore which were in competition with services provided by the hospital group about which the Hospitalist Agreement granted the hospitalist group exclusive rights with respect to Bayshore.

- ¶ 26.  At a tape-recorded MEC meeting on May 17, 2012, a Meridian official declared:

    > So [Dr. Patel's group is] on your call schedule.  ***You [Bayshore administrators] now created inadvertently a real liability for the [Meridian] system which has an exclusive contract with the hospitalist group.***  In all of our hospitals, the hospitalist group has an exclusive contract.

    (MEC Tr. May 17, 2012, Tr. 45-46, emphasis added).  The MEC then affirmed the summary suspension of Dr. Patel at that same meeting.

- ¶ 27. In sworn testimony at the internal hearing after the summary suspension of Plaintiff Patel, Defendant Larsen confirmed that the Hospitalist Agreement between Meridian and the hospitalist group compelled Bayshore to exclude Dr. Patel:

    **Q**: Does the exclusive contract require Bayshore to exclude other physicians who perform hospitalist services?

    **Defendant Larsen: Right**. They have an exclusive contract . . . .

    (Tr. June 4, 2012. 89:25-90:4, emphasis added)

- ¶ 28. Plaintiffs provided hospitalist-like services at Bayshore, but were not part of this hospitalist group having the exclusive contract (Hospitalist Agreement) with Meridian, and Defendants enforced the Hospitalist Agreement by summarily suspending Dr. Patel and excluding his colleagues at Plaintiff Mid-Atlantic.

- ¶ 98. Defendants' actions were undertaken with a common design, understanding, and unity of purpose with the hospitalist group and its Hositalist Agreement, in order to exclude Plaintiffs from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act and Section 4 of the Clayton Act.

These allegations establish that Meridian did, in fact, enter into an exclusive contract with HMA, referred to by Plaintiffs in their proposed Amended Complaint as the Physicians Group. However, that is all that they establish. They in no way plausibly unite HMA with Defendants' purported actions to exclude Plaintiffs from the relevant market. Instead, the aforementioned allegations simply show that Defendants took actions against Plaintiffs without any reference to HMA. (*See* Proposed Amended Cmplt. ¶¶ 26, 28). Indeed, all of the purported anticompetitive behavior set forth in the Complaint is attributed to Defendants: *See, e.g.,* (1) *Id*. ¶¶ 26, 28 (*supra*), 94-96 (alleging, respectively, "Defendants then acted unreasonably . . . by summarily suspending the hospital privileges of Plaintiff Patel at Bayshore . . . ."; "Defendants . . . arrang[ed] a joint boycott of Plaintiff Patel's services . . . ."; and "Defendants' agreement to take draconian punitive action against Plaintiff Patel . . . ."); and (2) 100-104 and 107-108 (referencing "Defendants' concerted actions"). None of these allegations are directed to HMA.

As Defendants observe, "there is no allegation that any of the Defendants met with HMA or had any conversations or written communications, such as emails, with HMA to show that they conspired to exclude Plaintiff from the relevant market. Indeed, HMA is not even a named defendant in this action." (Defs. Opp. Br. at 35). In fact, the only allegation tying HMA to Defendants' allegedly anticompetitive behavior is Plaintiffs' claim that "Defendants' actions were undertaken with a common design, understanding, and unity of purpose with the hospitalist group and its Hospitalist Agreement, in order to exclude Plaintiffs from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act and Section 4 of the Clayton Act." (Proposed Amended Cmplt. ¶ 98). However, this allegation represents a legal conclusion that the Court need not accept. *Baraka*, 481 F.3d at 211. As *Twombly* warned, a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" 550 U.S. at 555 (citation omitted).

Under Section 1 of the Sherman Act, "mere unilateral or independent activity, whatever its motivation, cannot give rise to an antitrust violation." *Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp.*, 786 F.2d 564, 572 (3d Cir. 1986). Instead, "a plaintiff must allege facts plausibly suggesting 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Howard Hess*, 602 F.3d at 254 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed. 2d 628 (1984) (quotation omitted). The sheer fact that Meridian entered into an exclusive contract with HMA does not plausibly suggest such a unity. Indeed, the fact that Defendants' conduct may have been motivated by the exclusive contract is, without more, insufficient. As a result, Plaintiffs have failed to adequately allege an agreement and therefore their proposed Sherman Act claim is

futile.  Consequently, Plaintiffs' request to amend their Complaint in order to assert said claim is denied.

## III. Conclusion

For the reasons stated above, Plaintiffs' motion seeking leave to file an Amended Complaint to assert a Sherman Act claim is DENIED.  The motion is GRANTED in all other respects.  An appropriate Order follows.

Dated:  September 28, 2015

                                                s/Tonianne J. Bongiovanni
                                                **HONORABLE TONIANNE J. BONGIOVANNI**
                                                **UNITED STATES MAGISTRATE JUDGE**